UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHRISTINA L.**[1]

      **Plaintiff,**

  v.                                        **Civil Action 2:24-cv-1156**
                                                      **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

**OPINION AND ORDER**

Plaintiff, Christina L. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is before the Court for a ruling on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 10), and the administrative record (ECF No. 7). Plaintiff has not filed a Reply. For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED**, and Plaintiff's Statement of Errors is **OVERRULED**.

                                                        **I.    BACKGROUND**

Plaintiff protectively filed her DIB and SSI applications on May 18, 2020, alleging that she became disabled that same day. After Plaintiff's applications were denied at the initial and reconsideration levels, an administrative law judge ("ALJ") held an online video hearing on

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

December 14, 2022. Plaintiff, who was represented by counsel, and a vocational expert ("VE") participated in that hearing. On January 27, 2023, the ALJ issued an unfavorable determination, which became final on January 17, 2024, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. She asserts that the ALJ committed three reversible errors. First, she contends that the ALJ erred by failing to find that her fibromyalgia was a medically determinable impairment. (Pl.'s Statement of Errors 17–19, ECF No. 8.) Next, she contends that the ALJ erred when adopting findings from state agency reviewers that she could perform light work even though evidence that was unavailable to the reviewers showed that she could not. (*Id*. at 19–23.) Last, Plaintiff contends that the ALJ erred by finding a consultative examiner's opinion persuasive but failing to incorporate into her residual functional capacity ("RFC")[2] the limits that the examiner opined. (*Id*. at 23–25.) The Commissioner contends that Plaintiff's contentions lack merit. (Df.'s Memorandum in Opp., 4–12, ECF No. 10.) The Court agrees.

## II.     THE ALJ'S DECISION

On January 27, 2024, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 18–36.) At step one of the sequential

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantially gainful activity since the alleged onset date of May 18, 2020. (*Id.* at 21.) At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, degenerative disc disease with left-sided cervical radiculopathy, plantar fasciitis, left carpal tunnel syndrome, bilateral hip osteoarthritis, hypertension, right elbow calcification/ossification, and depressive disorder. (*Id.*) The ALJ also found that Plaintiff had the following non-severe impairments: presbyopia, adnexal cyst, hypothyroidism, vitamin D deficiency, multinodular non-toxic goiter, Seborrheic keratosis, multiple skin nodules, left inguinal abscess, viral upper respiratory infection, acute bronchitis, and allergic rhinitis. (*Id.*) The ALJ also determined that Plaintiff's alleged fibromyalgia and migraine headaches were non-medically determinable impairments. (*Id.* at 22.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R.

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

Part 404, Subpart P, Appendix 1. (*Id.* at 22–25.) Before proceeding to step four, the ALJ set forth Plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can frequently operate hand controls with the left hand and frequently operate foot controls, bilaterally; she can frequently reach, bilaterally; she can frequently handle and finger items with the left hand. She can never crawl or climb ladders, ropes, or scaffolds; she can occasionally crouch and climb ramps and stairs; she can frequently balance, stoop, and kneel. She can tolerate occasional exposure to vibration and work at unprotected heights or around moving mechanical parts; she can tolerate frequent exposure to extreme cold and operation of a motor vehicle. She must wear prescription eye glasses or contact lenses at all times. Additionally, she can perform simple work in a routine work environment involving no greater than occasional changes and no fast-paced production requirements.

(*Id.* at 25–26.)

At step four, the ALJ determined that Plaintiff would be unable to perform her past relevant work as a mail carrier, secretary, human resources manager or accounting clerk. (*Id.* at 34.) At step five, the ALJ, relying upon testimony from the VE, found that jobs existed in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and residual functional capacity could perform, with representative occupations being sorter, bagger, and tabber. (*Id.* at 34–35.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 35–36.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Although this standard "requires more than a mere scintilla of evidence, substantial evidence means only such

4

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Even though the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As explained above, Plaintiff asserts three contentions of error: 1) the ALJ failed to find that her fibromyalgia was a medically determinable impairment; 2) the ALJ adopted state agency reviewers' findings that she could perform light work even though later evidence showed that she could not; and 3) the ALJ failed to include in her RFC mental health limits from a persuasive opinion. (Pl.'s Statement of Errors 17–25, ECF No. 8.) The Court addresses these contentions of error in turn and finds that each lacks merit.

### A. The ALJ's Step-Two Determination That Plaintiff's Fibromyalgia Was Not a Medically Determinable Impairment[4]

Plaintiff's first contends that the ALJ reversibly erred at step two including her alleged fibromyalgia was not a medically determinable impairment, and therefore, neglecting to account for it when assessing her RFC. (Pl's Statement of Errors 17–19, ECF No. 8.) This contention of error lacks merit.

At step two, an ALJ must consider whether a claimant's impairment constitutes a "medically determinable impairment," *i.e.*, an impairment that results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1521, 416.921, 404.1520(a)(4)(ii), 416.920(a)(4)(ii). To be classified as "medically determinable," an impairment must also meet the durational requirement, meaning that it, "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 416.909. "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *Jones v. Comm'r of Soc. Sec.*, No. 3:15-cv-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017).

Social Security Ruling ("SSR") 12-2p "provides guidance on how [the Commissioner will] develop evidence to establish that a person has a medically determinable impairment . . . of fibromyalgia . . . , and how [the Commissioner will] evaluate [fibromyalgia] in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act (Act)." *Titles II & XVI: Evaluation of Fibromyalgia,* SSR 12-2p, 2012 WL 3104869, at *1

---

[4] Although Plaintiff indicates that the ALJ erred by failing to determine that her fibromyalgia was severe (Pl's Statement of Errors 17, ECF No. 8.), the ALJ instead determined that Plaintiff's fibromyalgia was not medically determinable, and thus, he never evaluated its severity (R. 22). Consequently, it appears that Plaintiff challenges the ALJ's determination that her fibromyalgia was not a medially determinable impairment.

6

(S.S.A. July 25, 2012); *see also Herzog v. Comm'r. of Soc. Sec.*, No. 2:16-cv-244, 2017 WL 4296310, at *2 (S.D. Ohio Sept. 28, 2017). To establish a medically determinable impairment of fibromyalgia under SSR 12-2p, a claimant must have a positive diagnosis of fibromyalgia from an acceptable medical source *and* produce documented evidence that meets either: 1) the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia ("1990 ACR Criteria") or 2) the 2010 American College of Rheumatology Preliminary Diagnostic Criteria ("2010 ACR Criteria"). 2012 WL 3104869, at *2.

Under the 1990 ACR criteria, a plaintiff must produce documented evidence of the following three issues:

1. A history of widespread pain— that is pain in all quadrants of the body (the right and left sides of the body both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine or low back)— that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present.

2. At least 11 positive tender points on physical examination . . . . The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist . . . .

3. Evidence that other disorders that could cause the symptoms were excluded . . . .

*Id*. at *2–*3. Under the 2010 ACR criteria, a plaintiff must produce documented evidence of the following three issues:

1. A history of widespread pain (as defined in the 1990 ACR criteria above).

2. Repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, irritable bowel syndrome, and or signs, such as fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome . . .

7

> 3. Evidence that other disorders that could cause the symptoms were excluded . . . .

*Id.* at *3.

Here, the ALJ appears to have concluded that Plaintiff's fibromyalgia did not constitute a medically determinable impairment because the record did not contain evidence that other disorders that could have caused Plaintiff's symptoms were excluded as required by both the 1990 or 2010 ACR Criteria. The ALJ explained his analysis as follows:

> Regarding alleged fibromyalgia, rheumatological specialist Tamara Postlethwait, APRN, examined the claimant on September 2, 2022, and found some tenderness in the claimant's shoulder, right arm, right elbow, chest, and knees; however, she noted that the claimant *did not* meet the criteria for a diagnosis of fibromyalgia if other possible causes for her symptoms were ruled out (Exhibit 23F)..... Accordingly, the undersigned considers the claimant's alleged fibromyalgia . . . to be non-medically determinable impairments.

(R. 22) (emphasis added)

Plaintiff correctly contends that the ALJ misquoted the record. On September 2, 2022, she was evaluated Tamara Postlethwait, APRN. (R. 1176–79.) Nurse Postlethwait wrote that Plaintiff had "[t]enderness to bilateral shoulder, right upper and lower arm" "[t]enderness to right elbow, fixed flexed," "[t]enderness to chest and bilateral knees," and "[n]o other tenderness upon examination." (*Id.* at 1178.) Nurse Postlethwait also noted that Plaintiff had been referred to be evaluated for fibromyalgia, but that it would be necessary to "rule out other possible causes of symptoms prior to diagnosis. Plaintiff does have multiple symptoms that will need to be evaluated." (*Id.*) Nurse Postlethwait diagnosed Plaintiff with "arthralgia, unspecified joint, and myalgia" and identified fibromyalgia as a possible diagnosis subject to being ruled out by further testing. (*Id.*) Nurse Postlethwait specifically wrote: "Patient *does* meet criteria [for fibromyalgia] if other possible causes for symptoms ruled out." (*Id.*) (emphasis added).

8

Again, and as Plaintiff points out, the ALJ indicated that Plaintiff *would not* meet the criteria for a fibromyalgia diagnosis if other possible causes were ruled out, but Nurse Postlethwait in fact indicated that Plaintiff *would* meet the criteria for a fibromyalgia diagnosis if other causes were ruled out. Despite this apparent scrivener's error, the salient issue appears to be that other causes of Plaintiff's symptoms needed to be ruled out before Plaintiff could be diagnosed with fibromyalgia. Plaintiff, however, fails to point to record evidence demonstrating that they were. Although Plaintiff underwent laboratory testing after her visit with Nurse Postlethwait, (R. 1180 – 211), and a treatment note stated "[f]ollow up in 2 weeks," (*id.*), there is no evidence in the record: (1) that any medical provider subsequently confirmed a diagnosis of fibromyalgia or (2) that Plaintiff was subsequently treated for fibromyalgia. *See Kuczma v. Berryhill*, No. 1:16-cv-3072, 2017 WL 9672558, at *13 (N.D. Ohio Oct. 19, 2017) (finding no error in the ALJ's determination that plaintiff's alleged fibromyalgia as not medically determinable impairment where plaintiff did not identify any treatment history for the condition), *adopted and aff'd*, 2018 WL 1357320 (N.D. Ohio March 16, 2018).

Accordingly, the Court finds that any error was harmless. Although the ALJ may have misquoted a treatment note, Plaintiff fails to point to record evidence that her fibromyalgia was a medically determinable impairment—Plaintiff was never positively diagnosed with fibromyalgia as required by SSR 12-2p. Nor does Plaintiff point to any record evidence that other causes of her symptoms were excluded as required by both the 1990 or 2010 ACR Criteria. Plaintiff's contention of error, therefore, lacks merit.

B. **The ALJ's Determination That Plaintiff Could Perform Light Work**

Plaintiff next contends that the ALJ erred by determining that she could perform light work, as opined by the state agency reviewers, because later evidence that was unavailable to them showed that she was not so capable. (Pl's Statement of Errors 19–23, ECF No. 8.)

9

Particularly, Plaintiff contends that after the state agency reviewers found that she could perform light work, later evidence—consisting of MRIs of Plaintiff's cervical spine[5] and left hip[6] and EMG examinations[7]—showed "new impairments of cervical stenosis, cervical radiculopathy, labral tear of the left hip and carpal tunnel syndrome." (*Id*. at 19.) Relying on *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908 (N.D. Ohio 2008), Plaintiff asserts that the ALJ was obligated to further develop the record because of this later evidence. (*Id*. at 22–23.) This contention of error lacks merit.

A plaintiff bears the burden of proving the existence and severity of limitations that are caused by her impairments. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 545 (6th Cir. 2007). But an ALJ bears the burden of developing the administrative record upon which a disability determination rests. *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir. 1983). An ALJ has a duty to develop the record because "[s]ocial security proceedings—unlike judicial ones—are inquisitorial, not adversarial." *Chester v. Comm'r of Soc. Sec.*, No. 11-1535, 2013 WL 1122571, at *8 (E.D. Mich. Feb. 25, 2013); *see also, Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate facts and develop the arguments both for and against granting benefits.").

An ALJ is not required to base his RFC determination on a medical opinion. *Mokbel-Aljani v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."). *See also Rudd v. Comm'r*

---

[5] Dated April 2022. (R. 1103-04.)
[6] Dated February 2022. (R. 970.)
[7] Dated March 2022 and September 2022. (R. 1051-55, 1280-83.)

10

*of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (explaining that requiring an ALJ to base an RFC determination on medical opinions would transfer the statutory responsibility to determine if an individual is under a disability from an ALJ to a medical source). Nor does an ALJ err by relying on medical opinions from physicians who have reviewed an incomplete record if the ALJ considers later evidence and adequately accounts for changes in a claimant's conditions. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (finding no error where an ALJ relied on opinions from state agency reviewers where the ALJ considered later evidence and accounted for relevant changes in the plaintiff's condition).

Even so, an ALJ must obtain opinion evidence to satisfy the duty to develop the record in at least two circumstances. One circumstance arises when an ALJ is required to make medical judgments about a claimant's functional abilities by interpreting raw medical data. *Gonzalez v. Comm'r of Soc. Sec.*, 3:21-cv-000093-CEH, 2022 WL 824145, at *8 (N.D. Ohio Mar. 18, 2022) (citing *Alexander v. Kijakazi*, No. 1:20-cv-01549, 2021 WL 4459700, at *9 (N.D. Ohio Sept. 29, 2021) ("Courts are generally unqualified to interpret raw medical data and make medical judgments concerning limitations that may reasonably be expected to accompany such data.") and *Mascaro v. Colvin*, No. 1:16CV0436, 2016 WL 7383796, at *11 (N.D. Ohio Dec. 1, 2016) (noting neither the ALJ nor the court had the medical expertise to conclude whether the results of a neurological exam necessarily ruled out the existence of a disabling condition)), *adopt and aff'd*, 2016 WL 7368676 (N.D. Ohio Dec. 20, 2016).

A medical opinion must also be obtained when "a 'critical body' of the 'objective medical evidence' is not accounted for by a medical opinion and there is significant evidence of potentially disabling conditions." *Gonzalez,* 2022 WL 824145, at *8 (quoting *McCauley v. Comm'r of Soc. Sec.*, No. 3:20-cv-13069, 2021 WL 5871527, at *14–15 (E.D. Mich. Nov. 17,

11

2021) (cleaned up)). In such circumstances, an ALJ should obtain opinion evidence that accounts for the entirety of the relevant period. *Id.* That obligation exists unless the medical evidence shows "relatively little physical impairment" and an ALJ "can render a commonsense judgment about functional capacity." *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-cv-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008) (cleaned up)).

Here, Plaintiff's file was reviewed initially on October 19, 2020, by Gerald Klyop, MD, who found that Plaintiff was restricted to light work. (R. 97.) Dr. Klyop further found that Plaintiff could occasionally climb ladders, ropes, and scaffolds; frequently kneel, crouch, crawl, and climb ramps and stairs; stand and/or walk for a total of 6 hours in an 8-hour workday; and sit for a total of 6 hours in an 8-hour workday. (*Id.*) Plaintiff's file was reviewed at the reconsidered level on May 8, 2021, by Steve McKee, M.D., who affirmed Dr. Klyop's assessment. (*Id.* at 118–19.)

Plaintiff correctly notes that after Drs. Klyop and McKee made these findings, additional evidence was made part of the record. But as the Commissioner also correctly points out, the ALJ discussed that later evidence in detail. (Df.'s Memorandum in Opp. 7 –8, ECF No. 10.) The ALJ, in fact, found that the state agency reviewers' opinions were not persuasive partly because of that later evidence. The ALJ explained:

> The undersigned finds the opinions of these State agency reviewing physicians not persuasive based on the severity of the claimant's cervical imaging, as well as left carpal tunnel syndrome and issues with her right elbow, which necessitate greater limitations. . . . On February 15, 2022, an MRI of the claimant's left hip revealed mild osteoarthrosis in both hips, as well as a degenerative tear in the anterosuperior left hip labrum, with an adjacent 13mm paralabral cyst (Exhibit 10F, page 2). An electrodiagnostic study dated March 31, 2022, indicated mild chronic C7 radiculopathy on the left, as well as mild left carpal tunnel syndrome (Exhibit 14F, pages 2-6). On April 25, 2022, an MRI of the claimant's cervical spine revealed moderate spinal canal stenosis at C5-6 and mild stenosis at C4-5 and C6-7; there

12

was also moderate right and severe left foraminal narrowing at the C5-6 level and mild left foraminal narrowing at the C6-7 level secondary to uncovertebral arthropathy as well as mild rotatory levoconvex scoliosis of the cervical spine with mild discogenic disease at C5-7 levels (Exhibit 17F, pages 6 and 7). X-rays of the claimant's left hip dated May 11, 2022, revealed mild degenerative arthrosis (Exhibit 18F, page 2). On September 2, 2022, x-rays of the claimant's right elbow indicated old epicondylitis and a small olecranon spur; there was no effusion, fracture, or articular abnormality seen (Exhibit 23F, page 38). Electrodiagnostic testing dated September 29, 2022, indicated mild chronic C7 radiculopathy on the left, with no evidence of any other focal nerve entrapment or cervical radiculopathy in the left upper limb (Exhibit 27F, pages 21-24). A CT of the claimant's right forearm on October 20, 2022, revealed chronic calcification adjacent to the lateral epicondyle suggesting chronic extensor tendinopathy; there was no visualized discrete abnormality (Exhibit 24F, page 3).

(R. 32–33.)

Notably, although the state agency reviewers and the ALJ found that Plaintiff could perform "light work," the ALJ determined that Plaintiff could only perform a more limited range of light work than was found by the reviewers. In particular, the ALJ determined that Plaintiff could: (1) only frequently operate hand controls with her left hand and operate foot controls bilaterally; (2) only frequently reach bilaterally; (3) only frequently handle and fingers items with her left hand; (4) never crawl or climb ladders, ropes or scaffolds; (5) only occasionally crouch and climb ramps and stairs; and (7) only occasionally tolerate exposures to vibration, unprotected heights, or moving mechanical parts. (*Compare* R. 97 with R. 25–26.) Accordingly, the ALJ did not rely on findings from reviewers who had access to an incomplete record. Rather, the ALJ discredited the reviewers' findings because the record before them was incomplete, and he imposed greater limits than those found by the reviewers.

In addition, even though Plaintiff's file was reviewed on reconsideration on May 8, 2021, Plaintiff was consultatively examined on July 2, 2022, by Casey Norris, D.O., who opined that Plaintiff was capable of medium work. (R. 1147-63.) That examination took place after the MRIs of Plaintiff's cervical spine and left hip and one of the two EMG examinations that

13

Plaintiff cites as being unavailable to the reviewers. Therefore, this is not an instance where the ALJ interpreted raw medical data or where a "critical body" of evidence was not accounted for by a medical opinion. Moreover, the ALJ discounted Dr. Norris' opinion because the record contained evidence that Plaintiff experienced carpal tunnel syndrome as well as degenerative changes in her cervical and lumbar spine that warranted greater restrictions. (*Id*. at 31.) When reaching that conclusion, the ALJ cited some of the same "later" evidence upon which Plaintiff relies. (*Id*.)

In short, the ALJ thoroughly discussed all the evidence in the record and he included limitations in Plaintiff's RFC—including limits on crawling; climbing scaffolds, ramps and stairs; and crouching—that accounted for later evidence that was made part of the record after the state agency reviewers concluded their review. The record also contained an opinion from a consultative examiner that post-dated the reviewers' findings. Accordingly, the Court finds that Plaintiff's contention of error lacks merit.

## C. The Consultative Examiner's Opinion

Plaintiff finally contends that the ALJ reversibly erred failing to incorporate into her RFC limitations opined by consultative psychologist, Regina McKinney, Psy.D., even though the ALJ found that Dr. McKinney's opinions were persuasive. (Pl's Statement of Errors 23–25, ECF No. 8.) This contention of error lacks merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[8] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions,

---

[8] Because Plaintiff's DIB and SSI applications were filed in 2020, it is governed by regulations that apply to applications filed after March 27, 2017.

(3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).

With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, when evaluating the persuasiveness of medical opinions and prior administrative findings, an ALJ must consider the following factors: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how he or she considered them. §§ 404.1520c(b)(2); 416.920c(b)(2). When considering supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support a medical opinion, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(1); 416.920c(c)(1). When considering consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(2); 416.920c(c)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*.

Here, the ALJ summarized a report authored by Dr. McKinney and determined that the doctor's opinions were persuasive. The ALJ wrote as follows.

15

> Regina McKinney, Psy.D., performed a consultative evaluation on January 20, 2021, and the claimant reported a history of depression, anxiety, and memory loss. She described mental health symptoms including loss of interest in activities, crying spells, social withdrawal, feelings of helplessness/hopelessness, and occasional auditory hallucinations. On a mental status examination, the claimant displayed an irritable and depressed mood with appropriate affect; she cried during the examination; she recalled six digits forward and three digits backward; she recalled 0/3 items after five minutes; she performed serial 3s in 9 seconds with two mistakes. Psychologist McKinney diagnosed major depressive disorder, single episode, severe with anxious distress. She commented that the claimant's depressive symptomatology may contribute to a slowed work pace (Exhibit 4F). The undersigned finds the opinion of this evaluating psychologist persuasive based on the claimant's presentation during the evaluation.

(R. 31.) Plaintiff does not contend that the ALJ failed to properly discuss the supportability and consistency factors. Instead, she contends that the ALJ selectively reviewed Dr. McKinney's report and thereby omitted limitations from her RFC. (Pl's Statement of Errors 23–24, ECF No. 8.)

Specifically, Plaintiff points out that that Dr. McKinney wrote that she was "irritable depressed, and cried during the interview, had few friends and only rare contact with them." (*Id*. (citing R. 25–26).) Consequently, Plaintiff urges that the ALJ should have included social interaction limits in her RFC. But a medical opinion is "a statement from a medical source about what [the claimant] can do despite [his/her] impairment(s) and whether [the claimant] has on or more impairment-related limitations or restrictions . . ." 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2). These statements by Dr. McKinney simply do not indicate that Plaintiff had any abilities or restrictions. Because they fail to indicate what Plaintiff could or could not do, they do not constitute medical opinions. And as Commissioner correctly contends, Dr. McKinney did not otherwise opine that Plaintiff had any social interactions limits. Indeed, Dr. McKinney wrote that Plaintiff "did not report any difficulty in getting along with coworkers or supervisors." (R. 515.) Accordingly, the ALJ did not err by failing to include social interaction limits in Plaintiff's RFC.

16

Plaintiff additionally points out that Dr. McKinney "noted that [her] attention and concentration skills . . . 'may also deteriorate over extended time periods slowing her performance in completing even simple, repetitive tasks . . . .'" (Pl's Statement of Errors 24, ECF No. 8 (quoting R. 515).) Plaintiff also points out that Dr. McKinney wrote that "exposure to day to day work stress could lead to increased anxiety and depressed symptomology such as crying, withdrawal, slowed work performance and poor frustration tolerance . . ." (*Id*. (citing R. 25).) As a result, Plaintiff argues, the ALJ should have included in her RFC limits regarding an impaired ability to perform simple, repetitive tasks at an adequate pace or to tolerate stress. But as the Commissioner correctly contends, Dr. McKinney's statements that Plaintiff's attention and concentration *may* deteriorate, or that exposure to stress *could* result in more symptoms were merely speculative, and thus, they also do not constitute functional limits that the ALJ was required to consider for inclusion in Plaintiff's RFC. *See Earley v. Comm'r of Soc. Sec.*, Case No. 2:19-CV-53, 2020 WL 1080417, at *4 (S.D. Ohio Mar. 6, 2020) (explaining that "[a]n ALJ commits no error when disregarding speculative or ambiguous limitations that do not definitively mandate that a claimant cannot perform a specific task or operate in a particular manner."). *See also Graham v. Comm'r Soc. Sec.*, No. 1:18-CV-1939, 2019 WL 4451366, at *5 (N.D. Ohio Sept. 17, 2019) (finding no violation of SSR 96-8p where the ALJ failed to explain why he did not adopt specific limitations because, *inter alia*, the at-issue limitations "were not definitive as they indicated that Plaintiff '*may* require some repetition' as to instructions and '*may*' need assistance in making independent decisions regarding work goals"); *Slivka v. Berryhill*, No. 1:17-CV-01076, 2018 WL 3340388, at *9 (N.D. Ohio May 29, 2018), *report and recommendation adopted*, 2018 WL 3336461 (N.D. Ohio July 5, 2018) ("To treat the *possible*

17

limitations floated by Dr. Matyi as an affirmative finding that such limitations are mandated would improperly alter the contents of the medical source's opinion.")).

Therefore, the Court concludes that the ALJ did not err by omitting from Plaintiff's RFC limits opined by Dr. McKinney because the statements referenced by Plaintiff's do not constitute medical opinions or concrete functional limits. Plaintiff's contentions to the contrary lack merit.

## V. CONCLUSION

For all the foregoing reasons, the Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner of Social Security's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE